NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

Terrence J. Fitzpatrick,

    Plaintiff,

v.

Porter Cable Corporation,

    Defendant

Civ. No. 06-0385 (DRD)

**O P I N I O N**

---

Charles V. Curley, Esq.
Scott M. Rothman, Esq.
HALBERSTADT CURLEY, LLC
1100 E. Hector Street, Suite 425
Conshohocken, Pa 19428

*Attorneys for Plaintiff*


Gregory D. Miller, Esq.
James L. Simpson, Esq.
PODVEY, MEANER, CATENACCI, HILDNER, COCOZIELLO & CHATTMAN
One Riverfront Plaza
Newark, New Jersey 07102

Scott A Neilson, Esq.
HENSON & EFRON, PA
220 South Sixth Street
Suite 1800
Minneapolis, Minnesota 55402-4503

*Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiff, Terrence Fitzpatrick, filed a complaint against his former employer, Defendant, Porter Cable Corporation, a subsidiary of Pentair, Inc. ("Pentair"), claiming that Defendant violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff claims that Defendant breached its fiduciary duty by refusing to enroll him in Pentair's retirement benefits plan. Presently before the court is Defendants motion to dismiss the complaint for failure to state a claim. As both parties submitted copies of the Pentair, Inc. Retiree Flex Plan Summary (hereinafter "the Plan Summary") along with their briefs, that document, in addition to the pleading, will be considered for purposes of deciding this motion.

For the reasons set forth below, Defendants motion to dismiss will be granted and Plaintiff's complaint will be dismissed with prejudice.

## I. BACKGROUND

**Plaintiff's allegations**

Plaintiff's complaint makes the following allegations:

In 2002 Plaintiff was fifty-four years old and had worked for Pentair for more than 20 years. At that time he met with Pentair's Director of Human Resources, Blake Williams, to discuss his benefit options upon retirement. Mr. Williams told Plaintiff that there were three different phases of healthcare coverage should Plaintiff retire before turning sixty-five. Mr. Williams explained that COBRA coverage was available for a period of up to eighteen months, after which, Plaintiff could enroll in Pentair's "pre-65" benefit plan until he turned sixty-five, at which time he could enroll in Pentair's "post-65" plan. Mr. Williams explained to Plaintiff that

electing COBRA coverage for a period of up to eighteen months would preserve Plaintiff's right to enroll in the pre-65 coverage once the COBRA coverage expired.

On or about February 29, 2004, at age 56, Plaintiff retired from Pentair. Plaintiff received a copy of the Plan Summary by mail. Shortly thereafter, he signed up for COBRA coverage. In May of 2005, as the expiration of his COBRA coverage grew near, Plaintiff contacted a Pentair representative to discuss enrolling in the pre-65 plan. He was informed that he was no longer eligible and was forever barred from participating in both the pre-65 plan and the post-65 plan because he had failed to enroll within 31 days of his retirement.

**Plaintiff's meeting with Mr. Williams**

Attached to the complaint as Exhibit A is a one-page description of the pre-65 coverage plan. Written on that sheet are handwritten notes that are only partially legible. Plaintiff alleges that those notes were written by Mr. Williams and constitute his explanation to Plaintiff, given in the 2002 meeting, explaining the three phases of Plaintiff's post-retirement coverage. Those notes appear to list the cost per month per person for each type of plan and appear to state the following: "55 - 56 ½ = COBRA," "56 ½ - 65 = pre-65," and "65+ = post-65."

**The Plan Summary**

Under a section titled "Participation and Coverage," located on page 2, the Plan Summary states that an eligible retiree must elect to participate in the Plan and that such "election must be made by detaching and signing the Notice and Election Form on page 5 and returning it to [the] Company Human Resources representative **no later than 31 days after [the retiree's] retirement date or 31 days after [the retiree receives the] summary, whichever is later.**" (Pl.'s Ex. A at 2) (emphasis in original). The election form, located on page 5 of the Plan

Summary provides the following:

> **Notice of Eligibility and Election Deadline:** This is to notify you of your eligibility to participate in the Pentair, Inc. Retiree Flex Plan (the Flex Plan). In order to participate, you must make a written election on this Notice and Election Form and return the Form to your Company Human Resources Department no later than the 31st day after the effective date of your retirement or the 31st day after receiving this notice, whichever is later.

(Pl.'s Ex. A at 5).

The Plan Summary discusses two distinct types of coverage: pre-65 and post-65. The Plan Summary does not discuss COBRA coverage in detail though it mentions it twice. The first mention of COBRA coverage states the following: "If either you or your spouse elect COBRA continuation coverage under your pre-retirement Company-sponsored health care plan, eligibility for dollar credits under the Flex Plan will begin at the end of COBRA coverage." (Pl.'s Ex. A at 2). The second mention of Cobra coverage states that flex credits under the pre-65 and post-65 plans may not be used to purchase COBRA coverage. (Pl.'s Ex. A at 3). Those references are the only discussion of Cobra coverage in the Plan Summary.

## II. DISCUSSION

### Standard for Dismissal under FED. R. CIV. P. 12(b)(6) and (c)

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73. Allegations contained in the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). However, the plaintiff is required to make

factual allegations and cannot rely on conclusory recitations of law.  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

**Plaintiff's Claim**

Plaintiff concedes that he did not enroll in a retirement plan within the thirty-one day period specified in the Plan Summary.  However, he argues that Pentair breached its fiduciary duty by refusing to enroll him when he attempted to sign up in May of 2005.  Furthermore, Plaintiff argues that Pentair should be estopped from denying him benefits because the Plan Summary is ambiguous and misleading, and because he relied on Mr. Williams' explanation of his coverage options in their 2002 meeting.

**Defendant's fiduciary duty**

"An ERISA plan's [summary] must be written 'in a manner calculated to be understood by the average plan participant, and [be] sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'" Bowerman v. Wal-Mart Stores, 226 F. 3d 574, 587 (7th Cir. 2000).

Plaintiff cites Bowerman for the proposition that a former employee should not be denied benefits where the plan summary failed to adequately explain the relationship between COBRA coverage and regular coverage, and a human resources representative failed to adequately explain the requirements for preserving the former employee's rights under the plan.  In that case, the plaintiff's pregnancy-related expenses were not covered because she became pregnant during a brief hiatus in her employment and failed to bridge-the-gap with COBRA coverage during that hiatus.  The court affirmed the district court's finding that the defendant had breached its fiduciary duty to the plaintiff because defendant had failed to provide the plaintiff with complete

and accurate information.  "Specifically, the Plan documents failed to explain how maintaining paid-up COBRA coverage rendered inapplicable a new pre-existing condition limitation" that would have otherwise barred employees from receiving coverage for conditions that arose during a gap in employment.  Id. at 591.  The court also noted that the plaintiff had reasonably relied on misinformation provided to her by company representatives when she sought clarification of the ambiguous language in the plan.  The court noted that the "problem with the Plan documents . . . was exacerbated by the incorrect and misleading answers provided by [the company representatives] when [the plaintiff] inquired about her coverage . . . ." Id.

     Unlike the plan summary in Bowerman, the Plan Summary in the present case is unambiguous as it clearly states in bold text that "election must be made . . . **no later than 31 days after [the retiree's] retirement date or 31 days after [the retiree receives the] summary, whichever is later.**"  Moreover, the Plan Summary's only references to COBRA coverage unambiguously pertain to dollar credits provided under the plan and do not pertain to overall eligibility.  Thus, there is no need for the Plan Summary to explain that electing COBRA coverage, and failing to enroll in a retirement plan within thirty-one days of retirement, renders a former employee ineligible.

     This case is further distinguishable from Bowerman because the plaintiff in Bowerman relied on advice, given after she had received the plan summary, that was meant to clarify ambiguous language in the plan summary.   In this case, Plaintiff's reliance on Mr. Williams' alleged advice was unreasonable because it was given more than a year prior to Plaintiff's retirement and contradicted the clear language in the Plan Summary that Plaintiff received upon retiring.  Thus, Pentair did not breach its fiduciary duty to Plaintiff.

**Equitable Estoppel**

Equitable estoppel principles apply to ERISA claims where the defendant made representations, upon which the plaintiff reasonably relied, that caused the plaintiff to fail to take action that would have enabled the plaintiff to receive benefits under the plan. Id. 586. However, "equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan. [Courts] simply have rejected the claim that 'bad advice delivered verbally entitles plan participants to whatever the oral statement promised, when written documents provide accurate information.'" Id.

As discussed above, the Plan Summary was unambiguous and Plaintiff's reliance on Mr. Williams' alleged advice was unreasonable. Mr. Williams' notes are too vague to be considered a written modification to the plan and any oral promises that Mr. Williams made are insufficient to entitle Plaintiff to equitable relief.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss will be granted. The Court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:        April 25, 2006